NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0113n.06

No. 17-3891

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANDRIY MIHUS, | ) | **FILED** |
| | ) | Mar 06, 2018 |
| Petitioner, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| JEFFERSON B. SESSIONS, III, U.S. Attorney | ) | BOARD OF IMMIGRATION |
| General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE:  COLE, Chief Judge; WHITE and BUSH, Circuit Judges.

**WHITE, Circuit Judge.**

Petitioner Andriy Mihus, a lawful permanent resident, seeks review of a final order of removal, arguing that the Board of Immigration Appeals (BIA) erred in finding him removable based on controlled-substances convictions under Ohio law.  Mihus further argues that the BIA erred by denying his request for asylum, withholding of removal, and protections under the United Nations Convention Against Torture (CAT).  We affirm the BIA's removability finding; we lack jurisdiction to consider the remainder of Mihus's claims.

## I.     Background

Petitioner Andriy Mihus was born in Lviv, Ukraine, on February 2, 1994, and is a citizen of Ukraine.  Mihus arrived in the United States in 2002 as a lawful permanent resident, along

with his parents and brother. Mihus's mother and father live in the United States, but his brother and grandparents are in Ukraine.

On March 26, 2013, Mihus was convicted under Ohio state law of attempted possession of heroin. Mihus received a sentence of five days of incarceration with credit for time served. The Department of Homeland Security (DHS) initiated removal proceedings against Mihus but, on September 5, 2013, an Immigration Judge (the IJ) granted cancellation of removal after Mihus promised to no longer use drugs. On June 13, 2016, however, Mihus was convicted of two Ohio drug offenses: possession of Adderall and attempted possession of heroin.

### A. Proceedings Before the Immigration Judge

On September 13, 2016, DHS initiated removal proceedings. DHS advanced the following factual allegations supporting removal:

1.  You are not a citizen or national of the United States;

2.  You are a native of the Ukraine and a citizen of the Ukraine;

3.  You were admitted to the United States at Detroit, Michigan on June 11, 2002 as an immigrant (DV3);

4.  You were, on March 26, 2013, convicted in Cuyahoga County Common Pleas Court, Cleveland, Ohio for the offense of Attempted Drug Possession (MI), to wit Heroin, in violation of sections 2923.02/2925.11 A of the Ohio Revised Code, case number CR-13-570882;

5.  You were, on September 5, 2013, granted Cancellation of Removal under section 240A by the Immigration Judge;

6.  On February 24, 2016, you were indicted under case number CR-603338 [sic], for Drug Possession in violation of ORC 2925.11(A), involving heroin or a compound, mixture, preparation, or substance containing heroin;

7.  On May 9, 2016, under case number CR-16-60338, your indictment was amended to reflect Attempted Drug Possession. No other amendments to your indictment under CR-16-60338 were made;

-2-

8.    On June 13, 2016, you were convicted under case number CR-16-60338 of Attempted Drug Possession, involving heroin or a compound, mixture, preparation, or substance containing heroin, in violation of ORC §§ 2923.02/2925.11(A);

9.    On an unknown date you were indicted under CR-14-587727 for Drug Possession in violation of ORC 2925.11(A), involving Amphetamine (Adderall), in an amount equaling or exceeding the bulk amount but less than five times the bulk amount;

10.   On May 9, 2016, under case number CR-14-587727, your indictment was amended to reduce the amount of drug involved to less than the bulk amount. No other amendments to your indictment under CR-14-587727 were made;

11.   On June 13, 2016, you were convicted under case number CR-14-587727 of Drug Possession, involving Amphetamine (Adderall), in violation of ORC 2925.11(A)[.]

(R. 596, 598.)[1]

Mihus opposed the charge of removability. Mihus admitted allegations one, two, three, six, seven, eight, nine, and ten; he denied allegations four and five, and neither admitted nor denied allegation eleven.[2] Mihus opposed DHS's contention that he was removable, arguing that his convictions did not constitute removable offenses because he was not convicted of a state offense that is a "categorical" match with any removable federal offense.

---

[1] DHS advanced factual allegations one through five in a Notice to Appear dated September 13, 2016. In that same notice, DHS also advanced allegations numbered six and seven, but those allegations were superseded by "Additional Charges of Inadmissibility/Deportability" dated November 15, 2016, which included allegations numbered six through eleven submitted "in lieu of the corresponding numbered allegations set forth in the original charging document." (R. 598.) The eleven allegations set out above are the final set of allegations.

[2] At a hearing on November 3, 2016—prior to DHS's filing of additional allegations— Mihus admitted allegations one, two, and three, and denied allegations four, five, six, and seven. As noted in footnote 1, above, DHS subsequently filed additional allegations. Mihus then filed a supplemental brief in which he admitted all of the new allegations except for eleven, which he neither admitted nor denied.

Courts considering whether a state conviction renders an immigrant removable engage in a three-step "categorical approach." Courts first consider whether the elements of the state crime "sufficiently match" the elements of the corresponding federal crime. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). If the elements match, the state statute is a "categorical match" and a state conviction counts as a qualifying federal conviction for purposes of removability. If the state statute criminalizes more conduct than is covered by the corresponding federal offense, courts proceed to step two: determining whether the state statute is "divisible." A statute is divisible if it sets out several separate crimes; a statute is *not* divisible if it sets out a single crime but provides alternative means of satisfying one of the elements of that crime. If the statute is divisible, the third step—known as the "modified categorical approach"—is to determine which of those separate crimes the immigrant was convicted of, and then to apply the categorical approach to that crime.

Mihus first argued that Ohio Revised Code § 2925.11—the substantive statute underlying both convictions—is not a categorical match with any federal statute because it criminalizes possession of at least one substance that is not illegal under the corresponding federal statutes. He next argued that § 2925.11 is not divisible because it requires proof of possession of a "controlled substance," rather than proof of possession of a particular substance. Mihus thus argued that the modified categorical approach was inapplicable and that his convictions could not constitute grounds for removal.

On December 8, 2016, the IJ rejected Mihus's arguments and found him to be removable. The IJ began by noting that Mihus had admitted factual allegations one, two, three, six, seven, eight, nine, and ten and therefore found that those allegations had been proven by clear and

convincing evidence. The IJ next considered whether to sustain factual allegations four, five, and eleven—the allegations that Mihus had not admitted.

The IJ did not sustain allegation four because, beyond providing a case number for the alleged conviction, DHS submitted no "documents to demonstrate the existence of the conviction described in factual allegation [four]" and, without additional evidence, the "factual allegation is not supported by the record." (R. 572.) The IJ sustained factual allegation five, noting that she had "granted the Respondent Cancellation of Removal pursuant to INA § 240A" in "an oral decision on September 5, 2013." (R. 572.) The IJ also sustained factual allegation eleven, noting that DHS had provided documents establishing that Mihus had pleaded guilty to possessing Adderall.

Having resolved the disputed factual allegations, the IJ next considered whether Mihus was removable. The IJ first agreed with Mihus that § 2925.11 was not a categorical match with the federal Controlled Substances Act (CSA). The IJ found that "an analysis of the divisibility of the statute is not necessary in light of [Mihus's] admission of . . . factual allegations six, seven, eight, nine, and ten," and the IJ's decision sustaining factual allegation eleven. (R. 575.) That is, the IJ appears to have assumed that, since the sustained allegations established that the substances underlying Mihus's convictions were illegal under federal law, there was no need to conduct a divisibility analysis. The IJ found that Mihus was removable based on his Ohio drug convictions.

On December 8, 2016, Mihus filed an application for asylum, withholding of removal, and CAT protections, asserting that he feared harm, mistreatment, and torture if he returned to Ukraine due to his opposition to the ongoing war. Mihus stated that he "oppose[d] the continued use of force by both sides in the current conflict" and is "afraid that if [he] voice[d his]

opposition to the draft or refuse[d] mandatory military service that [he] will be punished harshly and labeled as a traitor by both the government and Ukrainian citizens." (R. 479.) He further stated that he feared being "tortured and possibly even killed by the guards" and, if he is forced to fight for the government, feared "being tortured if . . . captured by the separatist rebels or Russian soldiers" because of "a tattoo of the Ukrainian Freedom Symbol on [his] back." (R. 480.) Mihus asserted that he has "heard stories that they have either cut out or burned similar tattoos on captured Ukrainian soldiers." (R. 480.) Mihus submitted documentary evidence including news articles and reports from the U.K. Home Office and the U.S. State Department.

On December 19, 2016, Mihus filed a "Motion to Withdraw Written Admissions of Certain Factual Allegations and Reconsider Removability Determination." (*See* R. 547–52.) Mihus argued that his counsel "merely intended to admit that there were in fact convictions for controlled substance offenses under Ohio law, *not* federal law." (R. 548.) Mihus argued that "binding [him] to the admissions would produce an unjust result" because, in reliance on those admissions, the IJ "failed to engage in an important analysis on the divisibility of" § 2925.11 and denied Mihus "a chance to have his good faith argument against removability heard." (R. 549.) The IJ denied the motion on January 12, 2017, concluding that she had not treated Mihus's "factual admissions as a concession of removability." (R. 542–43.)

The IJ held removal hearings on January 12, 2017, and January 20, 2017. On March 1, 2017, the IJ denied Mihus's application for asylum, withholding of removal, and CAT protections, and ordered him removed to Ukraine.

The IJ found that Mihus and his mother had testified credibly and summarized that testimony. In relevant part, Mihus and his mother testified that Mihus is "afraid to go back to Ukraine because of the war that began in 2014." (R. 56.) Mihus testified that he does not want

to serve in the Ukrainian military and fears that he will be conscripted. Mihus testified that if summoned to serve he would try to avoid service, but he worries that he would be imprisoned, and that if he disobeys an order from a commanding officer, he could be shot. Mihus testified that he is concerned that if conscripted, he would be forced to kill Ukrainian civilians. Mihus also testified that he worries that he would be captured by rebels and tortured because of his tattoo depicting a symbol of Ukrainian freedom. Mihus's mother testified in support of many of the same concerns: Mihus is afraid of conscription, afraid of imprisonment if he refused to serve, afraid that he would be forced to attack civilians if he were to serve, and afraid of being tortured by rebels if he were captured.

The IJ further noted that she had "considered all the evidence submitted by the parties," including the documentary evidence about conditions in Ukraine. (*See* R. 58.) In relevant part, those documents provided details about the conflict in Ukraine, noted that the Ukrainian government had instituted mandatory military service, and noted that a very large percentage of the eligible portion of the population was evading conscription. One document, prepared by the United States Congressional Research Service, noted that the current Ukrainian government was "moving slowly and cautiously in a positive direction, implementing much-needed government reform, addressing endemic corruption, and achieving economic progress," but acknowledged that "more work needs to be done" in the country. (R. 275.) The documentary evidence also mentioned reports of both Ukrainian government forces and Russian-backed separatists engaging in human-rights abuses.

The IJ noted that in order to establish eligibility for asylum or for withholding of removal, Mihus "must establish a well-founded fear of future persecution that is subjectively real and objectively reasonable." (R. 65.) The IJ further noted that "[t]he chance of future

-7-

persecution may be as low as 10 percent; however, the applicant must establish that the fear is subjectively real and objectively reasonable." (R. 62 (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987).) Although the IJ did "not doubt [Mihus] has a subjective fear of returning to Ukraine due to his long absence from that country and the ongoing war," she found that he "did not establish a well-founded fear of future persecution that is objectively reasonable." (R. 65.) In so finding, the IJ first found that 95% of men in Kiev successfully avoided the draft and only 32 men had been "prosecuted and sentenced and even fewer actually having to go to jail," concluding that Mihus "did not establish even a ten percent chance of being prosecuted and going to jail." (R. 65.) The IJ thus concluded that Mihus had not established the requisite likelihood of persecution. The IJ separately found that the treatment Mihus feared—potential imprisonment due to his refusal to serve in the military—would not be the result of Mihus's membership in any protected group. The IJ noted that "the record is clear and [Mihus] acknowledged that the conscription law applies equally to all men between certain ages" and, therefore, the "risk of going to jail is not a harm that would be inflicted on account of a protected ground." (R. 65.) The IJ further noted that "[b]eing prosecuted for evading military draft is not persecution unless the individual faces disproportionately severe punishment on account of a protected ground or unless the individual would be required to engage in inhumane conduct." (R. 65 (citing *Matter of R-R-*, 20 I&N Dec. 547, 551 (BIA 1992).) Mihus, the IJ found, "did not establish either of those facts to be present in his case." (R. 65.) With respect to "the harm [Mihus] fears at the hand of the rebels," the IJ found that "those are unfortunate results of war and would not be inflicted on account of his asserted protected grounds." (R. 65.)

The IJ thus denied Mihus's application for asylum, concluding that he "has not met his burden of proof that he will face harm that meets the definition of persecution" or "that his fear

of harm is objectively reasonable." (R. 65.) The IJ also noted that, since Mihus "has failed to satisfy the lower burden of proof required for asylum, it necessarily follows that he has failed to satisfy the more stringent clear probability of persecution standard required for withholding of removal." (R. 65–66.)

With respect to Mihus's request for CAT protections, the IJ noted that Mihus "has not established that it is more likely than not he would face harm that meets the definition of torture." (R. 66 (citing 8 C.F.R. § 1208.18(a)(3); *see also id.* § 1208.16(c)(2) (establishing that an applicant for CAT protections bears the burden of "establish[ing] that it is more likely than not that he or she would be tortured if removed")).) The IJ noted that Mihus did "not establish even a ten percent chance of going to jail" and also "acknowledged that his fear of jail is based on the fact he would be breaking the law by refusing to serve in the military and suffering or pain that arises from lawful sanctions does not meet the definition of torture." (R. 66 (citing 8 C.F.R. § 1208.18(a)(3)). The IJ noted that Mihus feared harm by the rebels, but concluded that he "did not establish that [it] is more likely than not to occur and would not be harm inflicted with the willful blindness of the government of Ukraine as the Ukrainian government is actively trying to stop the rebels." (R. 66.)

### B. Proceedings Before the Board of Immigration Appeals

Mihus appealed both the IJ's decision that he was removable and the IJ's denial of his application for asylum, withholding of removal, and CAT protections. Mihus advanced three arguments before the BIA. First, he argued that the IJ "erred by not reaching the divisibility analysis of [his] statute of conviction" and, therefore, erred in finding that he was removable. (*See* R. 18–23.) Second, Mihus argued that the IJ erred by not allowing him to withdraw his

counsel's admissions concerning the crimes of conviction. Third, Mihus argued that the IJ erred by denying his application for asylum, withholding of removal, and CAT protections.

The BIA dismissed Mihus's appeal in its entirety. With respect to Mihus's first argument, the BIA noted that the question "whether [Mihus's] convictions are controlled substances offenses rendering him removable as charged is a legal issue over which we have de novo review." (R. 4 (citing 8 C.F.R. § 1003.1(d)(3)(ii)).) Thus, although the IJ had not conducted a divisibility analysis, the BIA could engage in that analysis itself.

The BIA first observed that the Supreme Court has directed courts to "defer to state law." (R. 4 (citing *Mathis*, 136 S. Ct. at 2250, 2256–57, 2257 n.7).) Section 2925.11(A) of the Ohio Revised Code provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." (R. 4.) Recognizing that the "difficulty" of the modified categorical approach "lies in ascertaining whether the state statute contains alternative *means* or *elements*," the BIA looked to Ohio's pattern jury instructions. (R. 4. (emphasis added)) Those instructions state that in order to establish guilt, "the State must prove 'beyond a reasonable doubt that . . . , the defendant knowingly (obtained) (used) (possessed) (insert name of controlled substance).'" (R. 4 (quoting 2 CR Ohio Jury Instructions § 525.11).) Because "the State must identify and prove the substance in order to obtain a conviction," the BIA concluded that "the controlled substance involved . . . is an element" of the crime and, as such, § 2925.11 is divisible. (R. 4–5, n.3.) Beyond examining the jury instructions, the BIA did not explicitly consider any other source of Ohio law.

Having found § 2925.11 to be divisible, the BIA reviewed the documents underlying Mihus's conviction and found that "the plea colloquy specifically states the substances involved were heroin and Adderall, both of which are included in the federal Controlled Substances Act."

(R. 5.) The BIA thus concluded that Mihus's "offenses fall within our generic definition of a controlled substances offense . . . and he is removable as charged based on his convictions." (R. 5.)

The BIA also rejected Mihus's argument that the IJ erred by not allowing him to withdraw his counsel's admissions. The BIA noted that counsel's admissions established that Mihus's convictions involved heroin and Adderall by clear and convincing evidence and that in removal proceedings, petitioners are bound by their counsel's admissions absent a showing both that the admissions were untrue and of the existence of "ineffective assistance of counsel or some other egregious circumstances." (R. 3 (quoting *Hanna v. Holder*, 740 F.3d 379, 387 (6th Cir. 2012)).) Given its earlier finding that Mihus was removable under the modified categorical approach, the BIA also suggested that any error by the IJ on this point was harmless. Finally, the BIA rejected Mihus's argument that he was eligible for asylum, withholding of removal, or CAT protections. The BIA found that the record evidence supported the IJ's conclusions (a) that Mihus had a less than 10% chance of being forced to serve in the military or prosecuted for draft dodging and (b) that Mihus had not demonstrated a likelihood that he would be subjected to torture.

## II. Discussion

Mihus advances three arguments on appeal. First, Mihus argues that § 2925.11 is not divisible. Second, Mihus argues that he demonstrated an objectively reasonable fear of future persecution and was therefore eligible for asylum or withholding of removal. Third, Mihus argues that he demonstrated that it is more likely than not that he will be tortured if he returns to Ukraine and is therefore eligible for CAT protections.

## A. Jurisdiction and Standard of Review

Pursuant to 8 U.S.C. § 1252, this court has jurisdiction to review a final order of removal. The BIA and IJ found Mihus to be removable because he was convicted of a controlled-substances offense. *See* 8 U.S.C. § 1227(a)(2)(B). Where a final order of removal is entered "against an alien who is removable by reason of having committed," among other things, a controlled substances offense, our review is limited to "constitutional claims or questions of law." 8 U.S.C. §§ 1252(a)(2)(C), (D).

We have recognized that this limited scope of review applies to "any order of removal 'against an alien who is *removable* by reason of having committed' a relevant crime." *Ventura-Reyes v. Lynch*, 797 F.3d 348, 358 (6th Cir. 2015) (quoting 8 U.S.C. § 1252(a)(2)(C)). The question is therefore "a straightforward inquiry: Was the alien charged with removability because of a relevant crime, and did the IJ correctly sustain that charge? If so, we lack jurisdiction over all questions not covered by § 1252(a)(2)(D)." *Id.* (quoting *Pechenkov v. Holder*, 705 F.3d 444, 451–52 (9th Cir. 2012) (Graber, J., concurring)).

Because the IJ and BIA determined that Mihus was removable by reason of having committed a controlled-substances offense, our review is limited to constitutional claims or questions of law. We review such claims de novo. *See id.* (citing *Stserba v. Holder*, 646 F.3d 964, 971 (6th Cir. 2011)).

## B. Mihus's Arguments on Appeal

### 1. Mihus's Conviction Under Ohio Revised Code § 2925.11 is a Removable Offense

When an alien is removable by reason of a state conviction, "we generally employ a 'categorical approach' to determine whether the state offense is comparable" to a federal offense

for which an alien would be subject to removal. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). Under that approach, the "facts of the particular prior case" are irrelevant; the only issue is whether "'the state statute defining the crime of conviction' categorically fits within the" federal definition. *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)). A state controlled-substances offense is a categorical match with a federal controlled-substances offense "only if a conviction of the state offense 'necessarily involved facts equating to'" the federal offense. *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 24 (2005) (plurality opinion)).

Where the state statute "sweeps more broadly" than the federal statute, it is not a categorical match and the court must determine whether the state statute "is 'divisible'—i.e., comprises multiple, alternative versions of the crime." *Descamps v. United States*, 570 U.S. 254, 262 (2013). Where a statute is divisible, courts may engage in the modified categorical approach under which they examine a limited set of documents to determine the alien's crime of conviction.

In order to determine whether a statute is divisible, courts must determine whether the statute sets out alternative elements or alternative means. "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). At trial, elements "are what the jury must find beyond a reasonable doubt to convict the defendant," *id.* (citing *Richardson v. United States*, 526 U.S. 813, 817 (1999), and "at a plea hearing, they are what the defendant necessarily admits when he pleads guilty," *id.* (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Certain statutes, however, "enumerate[] various factual means of committing a single element" and are therefore not divisible. *Id*. at 2249. For example, a statute that "requires use of a 'deadly weapon' as an element of a crime and further

provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify" sets out alternative *means* of satisfying a single element and is not divisible. *Id.* (citing *Descamps*, 570 U.S. at 270–71; *Richardson*, 526 U.S. at 817).

To determine whether the Ohio statute here is divisible, we must determine whether it sets out a list of controlled substances as alternative elements of the crime or as various means by which a single element may be accomplished. The Supreme Court has made clear that courts must look to state law, which may include "a state court decision [that] definitively answers the question." *Mathis*, 136 S. Ct. at 2256. Or, "the statute on its face may resolve the issue." *Id.* If "state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself." *Id.* "[S]uch a peek at the record documents is for the sole and limited purpose of determining whether the listed items are elements of the offense." *Id.* at 2256–57 (internal citations, quotations, and alterations omitted). For example, an indictment or jury instruction that uses a "single umbrella term," "is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* at 2257. On the other hand, an indictment or jury instruction that "referenc[es] one alternative term to the exclusion of all others" indicates "that the statute contains a list of elements, each of which goes toward a separate crime." *Id.*

### a. Discussion

The IJ and BIA found, and the parties agree, that at the first step of the categorical approach, § 2925.11 is too broad to count as a categorically generic controlled-substances offense because it criminalizes possession of at least one substance that is not covered by the federal CSA. We agree; Ohio criminalizes possession of, among other things, the psychoactive

plant *Salvia divinorum*, which is not covered by the CSA. *Compare* Ohio Rev. Code § 3719.41(C)(33) *with* 21 C.F.R. § 1308.

So we proceed to step two. If § 2925.11 is not divisible, our inquiry can proceed no further, and we must find that the BIA erred by finding Mihus to be removable. If § 2925.11 is divisible, we may then look at the documents underlying Mihus's conviction to determine whether the crime of conviction necessarily involved elements that would constitute a violation of the federal CSA.

Ohio Revised Code § 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." The Ohio Revised Code defines "controlled substance" as any "drug, compound, mixture, preparation, or substance included in" one of five schedules. *See* Ohio Rev. Code §§ 3719.01(C), 3719.41. The statute further establishes that a person who "violates [§ 2925.11(A)] is guilty of one of" a number of crimes, each of which imposes a different penalty based on the identity and quantity of the controlled substance at issue. Ohio Rev. Code § 2925.11(C). For example, an individual is guilty of "aggravated possession of drugs" if "the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs." Ohio Rev. Code § 2925.11(C)(1). Similarly, an individual is guilty of simple possession of drugs if "the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule III, IV, or V." Ohio Rev. Code § 2925.11(C)(2). And, finally, separate subsections criminalize, as separate and distinct crimes, the possession of "marihuana," cocaine, L.S.D., heroin, hashish, or any "controlled substance analog." *See* Ohio Rev. Code §§ 2925.11(C)(3)–(8). Thus, the text of § 2925.11 establishes that any conviction requires identification of the specific controlled

substance at issue, indicating that the identity of the controlled substance is an element of the crime.

This reading is supported by Ohio case law. For example, the Supreme Court of Ohio noted that § 2925.11 "establishes separate offenses based on the identity of the controlled substance involved." *State v. Eafford*, 970 N.E.2d 891, 895 (Ohio 2012); *see also State v. Barr*, 897 N.E.2d 1161, 1165 (Ohio Ct. App. 2008) (noting that under § 2925.11 "possession of methylphenidate and possession of marijuana require the proof of a different fact—the possession of the particular controlled substance" and, therefore, "they constitute separate offenses"); *State v. Jennings*, 537 N.E.2d 685, 688 (Ohio Ct. App. 1987) (finding that "each listed substance has an independent significance standing by itself" in part because § 2925.11 speaks in terms of "'a' controlled substance, meaning any one controlled substance, rather than in terms of 'any' controlled substance or 'any controlled substances of the same schedule'"). Ohio's jury instructions also require juries to identify the name of the controlled substance at issue. *See* 2 CR Ohio Jury Instructions § 525.11 ("Before you can find the defendant guilty, you must find beyond a reasonable doubt that . . ., the defendant knowingly (obtained) (used) (possessed) (insert name of controlled substance)."). Finally, even if we were to "peek" at the documents underlying Mihus's conviction, *see Mathis*, 136 S. Ct. at 2256–57, such a peek only confirms that the identity of the controlled substance is an element because the indictments specifically name the controlled substance at issue

In arguing to the contrary, Mihus makes no attempt to distinguish the case law set out above. Instead, Mihus relies on case law that is either inapposite or distinguishable. First, Mihus cites *State v. Cabrales*, 886 N.E.2d 181, 188 (Ohio 2008), for the proposition that the Ohio Supreme Court "views the last element of drug possession under O.R.C. § 2925.11 as 'controlled

substance.'" (Pet. Br. at 11.) However, the *Cabrales* court considered whether possession of marijuana under § 2925.11 and trafficking in controlled substances under §§ 2925.03(A)(1) and (A)(2) were convictions of "allied offenses of a similar import" under § 2941.25, Ohio's multiple-count statute. *See Cabrales*, 886 N.E.2d at 188. Under the multiple-count statute, courts consider whether "the elements . . . correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* at 184.

The Ohio trafficking statute mirrors § 2925.11: it first sets out prohibitions in terms of "controlled substances" or "controlled substance analogs" and then defines separate crimes and penalties based on the identity of the controlled substance at issue. *See* Ohio Rev. Code § 2925.03. Because the portion of the trafficking statute concerning the identity of the controlled substance matches the corresponding portion of § 2925.11, the court focused on the *conduct* surrounding those substances; it did not discuss whether the specific controlled substance was an element or a means. *See Cabrales*, 886 N.E.2d at 188. Mihus's assertion that the *Cabrales* court "views the last element of drug possession under O.R.C. § 2925.11 as 'controlled substance'" does little to support Mihus's conclusion that "the type of drug is merely a means used to commit the offense of drug possession," because *Cabrales* did nothing more than quote the language of § 2925.11. (Pet. Br. at 11.) In fact, the *Cabrales* court stated that "trafficking in a controlled substance . . . and possession of *that same controlled substance* . . . are allied offenses of similar import because commission of the first offense necessarily results in commission of the second." *Cabrales*, 886 N.E.2d at 188 (emphasis added). That is, the *Cabrales* court considered the identity of the controlled substance in reaching its conclusion, undercutting Mihus's assertion that the court only treated the umbrella term "controlled substance," and not the particular substance itself, as the element.

Mihus next cites *State v. Jackson*, 980 N.E.2d 1032 (Ohio 2012), for the proposition that "the Ohio Supreme Court has held that the name of the controlled substance need not even be listed on an indictment for drug offenses." (Pet. Br. at 11.) *Jackson* concerned only Ohio's trafficking statute and made no mention of § 2925.11. *See Jackson*, 980 N.E.2d at 1037. Mihus is correct that *Jackson* held that "the schedule of drugs set forth [by the Ohio code], not the specific drug itself, [is] an essential element of trafficking" and that, therefore, the specific drug need not be listed on an indictment for trafficking, but Mihus provides no support for the proposition that such a holding extends to § 2925.11. This is especially true in light of the case law set out above specifically holding that § 2925.11 "establishes separate offenses based on the identity of the controlled substance involved." *Eafford*, 970 N.E.2d at 895; *see also Barr*, 897 N.E.2d at 1165; *Jennings*, 537 N.E.2d at 688.

Although this disparity between the Ohio Supreme Court's treatment of Ohio's trafficking statute and its treatment of Ohio's possession statute may be troubling in light of the statutes' similar structures, it is beyond our purview to second-guess the Ohio Supreme Court in this matter of Ohio law,[3] and Mihus has provided no support for overriding established Ohio law concerning the elements of *drug possession* based on *Jackson*'s holding concerning *drug trafficking*.

Mihus also relies on *Harbin v. Sessions*, 860 F.3d 58, 64 (2d Cir. 2017). (*See* Reply at 3.) *Harbin*, however, is inapposite because it concerns the divisibility of a crime defined by the New York Penal Law. *See Harbin*, 860 F.3d at 61. Finally, Mihus argues that the BIA erred by relying only on Ohio's jury instructions in reaching its conclusion that the statute was divisible.

---

[3] We are aware of no Ohio case discussing this differential treatment of the two statutes.

Although Mihus is correct that the BIA took an improperly narrow view of Ohio law, our de novo review has considered the relevant statutory text and structure, as well as established case law.

We conclude that § 2925.11 is divisible and the BIA did not err in finding that Mihus is removable because he was convicted of possession of Adderall and attempted possession of heroin, both of which are controlled substances under federal law. *See* 21 U.S.C. §§ 802, 812; 21 C.F.R. § 1308.

### 2. We Lack Jurisdiction Over Mihus's Claims for Asylum, Withholding of Removal, and CAT Protections

Mihus next claims that the BIA and IJ erred in denying his eligibility for asylum, withholding of removal, and CAT protections.

We ordinarily have jurisdiction to review factual findings by the BIA and IJ under the deferential "substantial evidence" standard. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). However, because Mihus is removable based on his criminal convictions, our jurisdiction is limited and we may review only "constitutional claims or questions of law." *See* 8 U.S.C. §§ 1252(a)(2)(C), (D). Before reaching Mihus's next claim, we therefore "must consider what type of analysis would be necessary to evaluate the claim on its merits." *Ettienne v. Holder*, 659 F.3d 513, 517 (6th Cir. 2011).

"Where our decision requires resolution of a contested interpretation of language in the statute or the regulations, the appeal will fall within our jurisdiction." *Id.* Likewise, "claims that require an evaluation of whether the BIA adhered to legal standards or rules of decision articulated in its published precedent can raise nondiscretionary 'questions of law' that are reviewable by the courts of appeals." *Id.* On the other hand, "we lack jurisdiction over claims

that the IJ failed to consider or put insufficient emphasis on particular factors." *Id.* (citing *Perez-Roblero v. Holder*, 431 F. App'x 461, 467–68 (6th Cir. 2011), *Farraj v. Holder*, 316 F. App'x 398, 400 (6th Cir. 2009)). Similarly, "objections to the [BIA's and IJ's] weighing of the facts [are] not within our jurisdiction to review." *Id.* at 519.

Mihus's opening brief does not acknowledge that our jurisdiction is limited, and he seems to concede that he raises issues of fact. (*See* Pet. Mem. at 13.) Indeed, Mihus makes no attempt to identify any questions of law and argues neither that his appeal "requires resolution of a contested interpretation of language in the statute or the regulations" nor that the BIA or IJ failed to "adhere[] to legal standards or rules of decision." *See Ettienne*, 659 F.3d at 517.

With respect to Mihus's claims for asylum and withholding of removal, Mihus argues that the "major issue with both of the previous administrative decisions is that they did not adequately consider major pieces of evidence before them." (Pet. Mem. at 14.) For example, Mihus argues that "the IJ did not adequately consider just how desperate the Ukrainian military is for more men to throw into battle." (Pet. Mem. at 18.) Throughout his opening brief, Mihus focuses on the factual record and repeatedly urges the court to disagree with the IJ's factual findings. (*See, e.g.*, Pet. Br. at 13 ("the only reason articulated by the IJ for denial of relief was the supposed failure to establish that [Mihus's] fear of future persecution was objectively reasonable"); Pet. Br. at 16 ("Mr. Mihus's testimony and evidence in the record clearly establish at least a reasonable probability of future persecution."); Pet. Br. at 20 ("There is substantial evidence that if returned to Ukraine, Mr. Mihus will be punished severely for his political opinion and refusal to join the Ukrainian army.") Mihus concludes that, contrary to the BIA's and IJ's factual findings, "he did meet his burden of proving that his fear of future persecution is objectively reasonable." (Pet. Mem. at 21.)

Similarly, Mihus fails to advance any legal argument concerning his application for CAT protections. Instead, Mihus simply asserts that "he is more likely than not to be tortured by the Ukrainian government and/or its agents for refusing mandatory military service and opposing the government policies related to the current conflict" or, if he were to submit to conscription, "he is also more likely than not to be tortured by the separatist rebels (or their supporters) for being a Ukrainian if he is captured." (Pet. Mem. 23.)

Mihus attempts to grapple with the issue of our limited jurisdiction for the first time in his reply brief, arguing that he "is not requesting the Court to disagree with the agency's finding of fact, but rather review for legal sufficiency the agency's application of those facts to the standards of asylum and withholding of removal." (Pet. Mem. at 7.) Mihus does not, however, articulate any legal argument; instead, he again argues that the IJ and BIA got the facts wrong and urges us to reach a different conclusion. (*See, e.g.*, Reply at 5 ("The primary element for asylum eligibility that Mr. Mihus argues is that the facts presented constitute an objectively reasonable fear of future persecution.").)

In his reply, Mihus also cites a number of cases purportedly in support of jurisdiction, all of which either are distinguishable or undercut his position. First, Mihus cites two cases ostensibly for the proposition that the existence of an objectively reasonable fear is subject to de novo review and, therefore, is properly within the court's jurisdiction. (Reply at 6 (citing *Matter of Z-Z-O-*, 26 I. & N. Dec. 586, 590 (BIA 2015); *Liu Jin Lin v. Holder*, 723 F.3d 300, 307 (1st Cir. 2013)).) As an initial matter, neither case concerns the limited scope of jurisdiction that follows from a finding of removability as a result of a criminal conviction, and neither has precedential effect in this circuit. And, although these cases *do* hold that the BIA may review de novo an IJ's findings concerning whether a petitioner has demonstrated an objectively reasonable

fear, they do not state that *our* review is de novo as well. *Liu Jin Lin*, 723 F.3d at 307 (noting that the BIA's decision concerning whether there is a "well-founded fear of persecution under the circumstances of the alien's case" is reviewed under "the deferential substantial evidence standard" applied to factual determinations).

Mihus cites two other cases in support of the proposition that courts "routinely" review immigration appeals concerning "intermingled" factual and legal issues. (Reply at 6 (citing *Mu Hua Pan v. Holder*, 381 F. App'x 572 (6th Cir. 2010), *Yong Xing Deng v. Holder*, 572 F. App'x 331 (6th Cir. 2014) (per curiam)).) Again, neither case involves the limited jurisdiction at issue here. Mihus also cites two cases discussing the "substantial evidence" standard. (Reply at 6 (citing *Zhao*, 569 F.3d at 247, *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)).) It is well established that, where we have jurisdiction to do so, we review factual findings by the BIA and IJ under the substantial-evidence standard. That standard simply does not apply here, however, because our jurisdiction is limited to reviewing legal issues.

Mihus also cites *INS v. Cardoza-Fonseca*, a Supreme Court case establishing that an alien need not prove that he would "more likely than not" be subject to persecution in order to demonstrate an objectively well-founded fear of future persecution. 480 U.S. 421, 440 (1987) (rejecting the proposition that "because an applicant only has a 10% chance of being shot, tortured, or otherwise persecuted, that he or she has no 'well-founded fear' of the event happening"). But the IJ here did not apply the more-likely-than-not standard to Mihus's asylum petition. Mihus simply cites *Cardoza-Fonseca*, without pincite, after asserting that the record evidence contains "important factors for establishing the 10% threshold required for finding a well-founded fear of future persecution." (*See* Reply at 8.) Without some indication that the IJ

and BIA applied an incorrect legal standard, Mihus's argument becomes one addressed to the weight of the evidence, a question over which we lack jurisdiction.

Mihus cites only two cases touching on our limited jurisdiction under 8 U.S.C. § 1252. He first cites *Berhe v. Gonzales* for the proposition that "the adequacy of the BIA's reasoning is a legal question and therefore not barred under 8 U.S.C. § 1252(a)(2)(C)." (Reply at 7 (citing *Berhe v. Gonzales*, 464 F.3d 74, 87 (1st Cir. 2006) (internal alterations omitted)).) In *Berhe*, the IJ granted CAT relief on two separate bases, but the BIA reversed without engaging in any discussion of one basis. Under First Circuit precedent, the BIA's decision was "insufficiently reasoned as a matter of law." *See Enwonwu v. Gonzales*, 438 F.3d 22, 35 (1st Cir. 2006). The First Circuit thus reviewed a legal error. Mihus has identified no analogous legal error here.

Second, Mihus argues that the government's reliance on *Ettienne v. Holder* is misplaced. The government cited *Ettienne* for the proposition that we "lack[] jurisdiction over claims that the IJ failed to consider or put insufficient emphasis on particular factors in the Petitioner's case." (Resp. Mem. 26 (quoting *Ettienne*, 659 F.3d at 518).) Mihus argues that *Ettienne* does not apply because, "given the facts provided to the IJ and BIA, . . . the BIA and IJ committed a legal error by not finding that Mr. Mihus possessed an objectively reasonable well-founded fear of future persecution." (Reply at 7 (citing *Ettienne*, 659 F.3d at 518).) Although we have jurisdiction over claims of legal error—including, for example, whether the "IJ had erroneously read BIA precedent"—"objections to the [BIA's and IJ's] weighing of the facts [are] not within our jurisdiction to review." *Ettienne*, 659 F.3d at 519. Finally, to the extent that Mihus argues that the facts found by the IJ and BIA establish an objectively reasonable well-founded fear as a matter of law, he fails to support that proposition. Because Mihus has failed to articulate any

legal error by the IJ or BIA and, instead, appears to argue only that the IJ and BIA got the facts wrong, *Ettienne* directly undermines his position.

For the reasons set out above, we lack jurisdiction to consider Mihus's claims with respect to the denial of asylum, withholding of removal, and CAT protections. *See* 8 U.S.C. § 1252.

### III. Conclusion

We **AFFIRM** the BIA's order of removal, and **DISMISS** Mihus's petition with respect to his claims for denial of asylum, withholding of removal, and CAT protections.