**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 11-1391

HE CHEN,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Souter,* Associate Justice,
and Lipez, Circuit Judge.

Gang Zhou on brief for petitioner.
Kristen Giuffreda Chapman, Trial Attorney, Office of
Immigration Litigation, U.S. Department of Justice, Tony West,
Assistant Attorney General, Civil Division, and Shelley R. Goad,
Assistant Director, on brief for respondent.

February 28, 2012

_____

* The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**LYNCH**, **Chief Judge**.  He Chen, a native and citizen of China, petitions for review of a 2011 decision by the Board of Immigration Appeals (BIA), denying him relief from removal.  The BIA affirmed the Immigration Judge's (IJ) denial of asylum and withholding of removal.  Chen illegally entered the United States near Hidalgo, Texas, on or about June 22, 2006.  After being served with a Notice to Appear on January 9, 2008, Chen conceded removability and sought political asylum and withholding of removal.  See 8 U.S.C. §§ 1158, 1231(b)(3).

At a merits hearing before the IJ, Chen claimed that he would be subject to involuntary sterilization at the hands of the government if he were removed to China.  A person who demonstrates that he or she "has been forced to . . . undergo involuntary sterilization . . . shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure . . . shall be deemed to have a well founded fear of persecution on account of political opinion" and will thereby qualify for asylum relief.  Id. §§ 1101(a)(42), 1158(b)(1)(A).  The IJ heard Chen's testimony and found that Chen was not credible.  The BIA upheld that finding.

When the BIA adopts and affirms the IJ's ruling but also discusses some of the bases for the IJ's opinion, we review both the IJ's and BIA's opinions.  Weng v. Holder, 593 F.3d 66, 71 (1st

-2-

Cir. 2010). We also review the IJ's credibility determination when the BIA adopts it, id., and will uphold a credibility determination under the familiar substantial evidence standard so long as "the IJ has given reasoned consideration to the evidence and has provided a cogent explanation for his finding," Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 5 (1st Cir. 2008); see also 8 U.S.C. § 1252(b)(4)(B).

The decision of the IJ here meets that test. It sets out conflicts between Chen's testimony and (1) Chen's own written statement attached to his asylum application, (2) a statement Chen made during his earlier asylum interview, and (3) a written statement submitted by Chen's wife.

Chen testified that family planning officials in China forced his wife to undergo an abortion because she had married Chen when she was underage and the marriage had not been registered, as required. A few days later, Chen testified, family planning officials came to his home while he was there to force his wife to have an IUD inserted, and he told them directly that he would not let her go for the procedure.[1] Chen claims that this direct confrontation with the family planning officials was what led to

---

[1] The transcript of Chen's testimony on this point reads as follows: "They came to my house when I was still at home, they notified me, when they came to my house, and I didn't want her to, and I had directly told me so." Reading this statement in the context of the rest of Chen's testimony, we assume there is a typo in the last clause and that it should read: "and I had directly told them so."

their later threats -- made after Chen came to the United States and related to him by his family -- to forcibly sterilize him.

Chen's written declaration attached to his asylum application says something different. It does not mention a direct confrontation between Chen and the family planning officials. Instead, he stated that he told his wife not to report for the IUD procedure. And his wife's statement is also different. Chen's wife said the family planning officials notified her that she would have to have an IUD inserted, and her family asked the government not to require the procedure. She does not say that her husband confronted the family planning officials. Finally, Chen's statement during his asylum interview made no mention of a confrontation between himself and the family planning officials over the IUD.

That is enough, but there is more. Chen's wife's statement makes it clear that Chen had already departed by the time the family planning officials came to Chen's wife's home to notify her that she was required to have an IUD inserted. It was impossible for Chen to have confronted the officials at that time.

The IJ presented Chen with these discrepancies, but Chen offered no satisfactory explanation for the inconsistencies, just repeating that the confrontation with the officials in fact took place as he described. Based on these prior inconsistent

-4-

statements, the IJ found Chen to be not credible and an unreliable witness.

The IJ also considered the plausibility of Chen's account. Chen testified that after he and his wife discovered that she was pregnant in August 2005, she went into hiding. Chen further testified that he visited her in January 2006 and, unbeknownst to him, was followed by family planning officials to her hiding place. The IJ found that it was implausible that the officials "had an around the clock surveillance" of Chen in order to discover his wife's hiding place.

In addition, the IJ further concluded that, any credibility determination aside, Chen had not been a victim of past persecution. Chen admitted that he was never arrested, detained, or harmed while in China. The IJ cited a decision of the Attorney General holding that the spouse of a person who has been physically subjected to a forced abortion is not per se entitled to refugee status. Matter of J-S-, 24 I. & N. Dec. 520, 520 (A.G. 2008); see also Jiao Hua Huang v. Holder, 620 F.3d 33, 36 (1st Cir. 2010). Under this rule, Chen could not qualify for asylum based on his wife's forced abortion.

Finally, even assuming that Chen's testimony was credible, the IJ found that Chen could avoid any threatened sterilization by consenting to the IUD insertion, which the IJ stated "is not necessarily a procedure designed to amount to

persecution on account of the Chinese family planning policy." Chen's claimed fear of persecution would not be well founded.

Under the REAL ID Act of 2005,[2] the agency may base its credibility finding on the "totality of the circumstances, and all relevant factors," including the "inherent plausibility" and "consistency" of the evidence, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); see also id. § 1231(b)(3)(C).

A claim of persecution that lacks veracity cannot satisfy the burdens of proof and persuasion necessary to establish eligibility for asylum and withholding of removal. Id. §§ 1158(b)(1)(B)(ii), 1231(b)(3)(C). Substantial evidence supports the denial of both types of relief.

Accordingly, we deny the petition for review.

---

[2] The provisions of the REAL ID Act of 2005 are applicable to Chen because he submitted his application for withholding of removal after the May 11, 2005, effective date of the Act. See 8 U.S.C. § 1158 note (Effective Date of 2005 Amendment).