# United States Court of Appeals
## For the First Circuit

No. 12-2271

LIU JIN LIN,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Lipez and Thompson, Circuit Judges.

Theodore N. Cox on brief for petitioner.
Virginia Lum, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, Stuart F.
Delery, Principal Deputy Assistant Attorney General, and Richard M.
Evans, Assistant Director, on brief for respondent.

July 23, 2013

**LYNCH**, <u>**Chief Judge**</u>.  On March 25, 2011, an immigration judge (IJ) granted petitioner Liu Jin Lin's application for asylum as to certain grounds and denied it as to other grounds.  The Department of Homeland Security (DHS) and Lin both appealed to the Board of Immigration Appeals (BIA).  On September 27, 2012, the BIA sustained DHS's appeal and vacated the IJ's grant of asylum, and affirmed the IJ's rejection of Lin's other grounds.  Lin timely petitions for review of the BIA's decision on limited grounds.  We deny the petition.

I.

A.      <u>Lin's Placement in Removal Proceedings and Application for Asylum, Withholding of Removal, and Protection Under the U.N. Convention Against Torture (CAT)</u>

Lin is a native and citizen of China who entered the United States on November 28, 2001, on a K-1 fiancée visa.  In October 2007, Lin filed an application with DHS for asylum, withholding of removal, and protection under the CAT.  On November 27, 2007 she was issued a Notice to Appear and placed in removal proceedings.  Lin conceded her removability, but sought relief based on the claims in her application.

B.      <u>The Hearing Before the IJ</u>

An IJ conducted a hearing on Lin's application on March 25, 2011, at which Lin testified and presented "voluminous"

materials. The IJ found that Lin testified "candidly and credibly."[1]

Lin testified that she was born in Changle City, in Fujian Province in China, on January 1, 1979, and came to the U.S. to "feel more free" and "have human rights." Lin was married in Quincy, Massachusetts on October 1, 2007, shortly before she applied for asylum, and had two children who were born in the U.S.: a son born in 2006, and another son born in 2008. At the hearing before the IJ, Lin stated that she wanted "four or five children." She said that if she were deported to China, her husband and children would come with her, and that she would have to register her children in a household register because otherwise they would not be allowed to go to school, receive benefits, have housing, or get a job. Lin testified that she was afraid that if she went back to China, she would be forced to undergo sterilization because she had violated the family planning law.

We describe those documents submitted in support of Lin's asylum application upon which she focuses in her brief to this court. This evidence included written statements from several of Lin's relatives in China describing how they had been forced to undergo sterilization after having multiple children in China between 1978 and 2011, as well as a statement from Lin's sister-in-

---

[1] The IJ also found Lin's asylum application had been timely filed because it "was submitted within a reasonable period after the conditions which gave rise to her fears occurred."

-3-

law describing how she had been forced to abort a pregnancy in 1996 because she had already given birth to one child in China. The IJ gave letters from Lin's relatives limited weight because they were not subject to cross-examination.

Lin relied heavily on a document from the "Family Planning Office of Guhuai Town, Changle City, Fujian Province" stating that if she and her husband were "deported back to China by the U.S. government, based on the Chinese family planning regulations, one must undergo IUD insertion after having one son and sterilization surgery after having two sons," and also pay a "social stipend fee." She submitted documents containing similar information from a residents' committee and a villagers' committee in Fujian Province. Lin's father obtained these documents at her request in order to support her asylum application.[2]

Finally, Lin submitted a 2009 Annual Report from the Congressional-Executive Commission on China and a 2007 Profile of Asylum Claims and Country Conditions from the U.S. Department of State ("2007 Profile"). The 2007 Profile stated that "U.S. officials in China are not aware of the alleged official policy, at the national or provincial levels, mandating the sterilization of one partner of couples that have given birth to two children, at least one of whom was born abroad."

---

[2] The IJ found that these documents had been "issued by the local authorities as [Lin] described."

C.        The IJ's Grant of Lin's Asylum Application

On March 25, 2011, the IJ issued a decision on Lin's claims. The IJ identified four bases on which Lin asserted that she had a well-founded fear of persecution should she return to China: (1) fear of forced sterilization because she had two sons born in the U.S.; (2) fear of economic persecution because of her two U.S.-born sons; (3) fear of forced IUD implantation because of her two U.S.-born sons; and (4) fear of forced abortion and sterilization if she had additional children in China.

With respect to the first basis, the IJ found that "there is absolutely no evidence in this record that the respondent would be punished on account of having children born to her in the United States, or for having violated the family planning policies or procedures in China," and that "the respondent's fears that she would be sterilized do not appear to have been established, through objective evidence, to be reasonable." As for the second basis, the IJ concluded that Lin had not established that "any fines levied upon her or her husband would in and of themselves constitute persecution."

Regarding the third basis, the IJ found Lin had "established to this Court's satisfaction that she would be expected to undergo, at a minimum, IUD insertion and possibly sterilization but she has not established with a certainty that the local officials in her province, in her town or in her husband's

-5-

town would force her to undergo this process." Nonetheless, the IJ also determined that Lin "certainly is reasonable in fearing that . . . she would be subject to, at a minimum, having an IUD inserted and being prevented by the authorities from giving birth to future children." The IJ noted that Lin "wishes to continue to increase the size of her family and to give birth to additional children," and concluded that "[t]he freedom to determine family size is fundamental to one's existence. Deprivation of that right cannot be denied to be persecutive in nature."

As to the fourth basis, the IJ explained that "[i]f the respondent were to become pregnant in China with a third child, it does appear that within her own family, individuals have been forcibly subjected to sterilizations or abortions. And although those have not happened within recent history, there is no evidence that conditions have changed with respect to that."

Based on the third and fourth grounds described above, the IJ granted Lin's asylum application.[3]

D.        The BIA's Reversal of the IJ's Grant of Asylum

DHS appealed the IJ's grant of asylum, and Lin cross-appealed the IJ's denial of her asylum claim based on her fear, should she return to China, of (1) being sterilized and (2) economic persecution on account of her U.S.-born sons.

---

[3] The IJ did not reach Lin's claims for withholding of removal or protection under the CAT.

-6-

The BIA affirmed the IJ's denial of Lin's claim for asylum based on her fear of sterilization due to having U.S.-born children, explaining that

> The totality of the background country evidence in the record, which includes the highly probative Department of State's 2007 Profile of Asylum Claims and Country Conditions ("2007 Profile"), did not establish that the respondent faces an objectively reasonable possibility of being "forcibly sterilized, or otherwise persecuted," in China for having two children while in the United States.

The BIA noted that the 2007 Profile stated that State Department officials had found no cases of physical force employed to effect sterilization in Fujian Province, and that U.S. officials were aware of no national or provincial policy in China mandating the sterilization of a parent who has had two children, at least one of whom was born abroad. The BIA affirmed the IJ's decision to give greater weight to the 2007 Profile than the other documentary evidence Lin had presented.[4] See also Chen v. Holder, No. 12-1883, slip op. at 6-7 (1st Cir. June 28, 2013) (dismissing petition for

---

[4] The BIA noted that the 2009 Congressional-Executive Commission Report did not show that violations of the birth control policy resulted in the forced sterilization in Fujian Province of Chinese citizen parents with more than one child born in the United States. The BIA affirmed the IJ's decision to give limited weight to the letters from Lin's relatives, who were not subject to cross-examination and, having given birth to their children in China, were not similarly situated to Lin. The BIA also explained that the notices from the family planning council and local committees did not indicate that Lin would face sterilization by physical force or other persecutory means, and did not describe the penalties for choosing not to be sterilized.

review from denial of similar asylum claim based on fear of sterilization due to U.S.-born children).

The BIA also affirmed the IJ's rejection of Lin's claim that she had a well-founded fear of economic persecution upon returning to China. The BIA noted that Lin had not presented evidence about her family's financial circumstances, and that the 2007 Profile indicated that social compensation fees varied widely. See also id. at 7 (discussing similar economic persecution asylum claim).

The BIA reversed the IJ's conclusion that Lin's fear of having an IUD implanted upon her return to China constituted a well-founded fear of persecution. As the BIA explained,

> the [IJ] did not identify individualized or background country evidence, and we find none in the record, that can support her ultimate determination that the respondent, as the mother of two children born in the United States, faces an objectively reasonable risk of having implanted an intrauterine device ('IUD') by Chinese authorities through persecutory means, or of suffering persecutory harm if she were to refuse to have an IUD implanted.

The BIA also rejected the IJ's conclusion that Lin had a well-founded fear of forced abortion or sterilization based on the possibility that she would again become pregnant in China. The BIA determined that "respondent's fear that she would suffer persecution based on the future additional births is too speculative to be considered well-founded."

-8-

The BIA sustained DHS's appeal, vacated the IJ's grant of asylum, and rejected the claim for withholding of removal.[5]

## II.

In her petition for review to this court, Lin does not challenge the denial of her claim for asylum based on the first ground identified by the IJ, i.e., her fear of sterilization because she had two children in the U.S. Nor does she present any challenge regarding the second basis, as to her fear of economic persecution due having U.S.-born sons.

Instead, Lin focuses on the third and fourth bases for her asylum claim. She argues that the BIA erred by impermissibly conducting de novo review of the IJ's factual findings and erroneously concluding that Lin had not demonstrated a well-founded fear of persecution based on her fear of (1) forcible IUD insertion, and (2) forced abortion and sterilization if she has additional children in China.

Where, as here, the BIA issued its own opinion, we review that opinion, as well as any portion of the IJ's opinion that the

_____

[5] Lin had filed two motions to remand based on additional evidence with the BIA, which the BIA denied. Lin does not challenge this decision before this court.

The BIA rejected Lin's CAT claim, explaining that "[t]he respondent in her brief has not claimed, nor does the record reflect that testimony, evidence, or arguments were made before the Immigration Judge establishing [Lin's] eligibility for protection under the [CAT]." In her brief to this court, Lin describes the standard for assessing CAT applications, but she makes no argument on this claim. It is therefore waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-9-

BIA adopted.  Vilela v. Holder, 620 F.3d 25, 28 (1st Cir. 2010). The BIA's determinations are subject to substantial evidence review, id., meaning we will uphold them unless "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).  We review legal challenges, such as the claim that the BIA impermissibly engaged in de novo factfinding, de novo.  Rotinsulu v. Mukasey, 515 F.3d 68, 72 (1st Cir. 2008).

To be eligible for asylum, an applicant must be a "refugee," 8 U.S.C. § 1158(b)(1)(A), who is unwilling or unable to return to her home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," id. § 1101(a)(42)(A).  While a showing of past persecution generates a rebuttable presumption of a well-founded fear of future persecution, Rebenko v. Holder, 693 F.3d 87, 92 (1st Cir. 2012), Lin has not claimed she was subject to past persecution in China. A person who "has a well founded fear that he or she will be forced to undergo [an abortion or involuntary sterilization] or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion."  8 U.S.C. § 1101(a)(42)(B).

A.          Lin's Fear of Persecution Based on IUD Implantation

Lin argues that the IJ found she would be subject to forcible IUD insertion if returned to China, and that the BIA

applied the wrong standard in rejecting this finding. The BIA reviews an IJ's factual findings for clear error, 8 C.F.R. § 1003.1(d)(3)(i). Lin mischaracterizes the BIA's analysis.

The IJ found only that Lin "is reasonable in fearing that . . . she would be subject to, at a minimum, having an IUD inserted," but the IJ also found that Lin had not established with certainty "that the local officials in her province, in her town or in her husband's town would force her to undergo this process." Nonetheless, the IJ concluded these facts alone allowed a finding that the insertion would amount to persecution. The BIA reversed this as clearly erroneous. The BIA noted there was no individualized and no background country evidence to support the conclusion of persecutory means. The BIA also found that the IJ committed clear error in finding that Chen, with two U.S.-born children, would not be allowed to have more children in China. There was no support in the record that those similarly situated to Chen, that is, Chinese citizen parents of U.S.-born children, have been subjected to such treatment. The BIA determined that the record did not support a finding that Lin "faces an objectively reasonable risk of having implanted an intrauterine device ('IUD') by Chinese authorities through persecutory means, or of suffering persecutory harm if she were to refuse to have an IUD implanted" (emphasis added).

Insertion of an IUD does not alone support a claim of persecution. "[T]o rise to the level of harm necessary to constitute 'persecution,' the insertion of an IUD must involve aggravating circumstances." In re M-F-W- & L-G-, 24 I. & N. Dec. 633, 642 (BIA 2008); see also He Chen v. Holder, 457 F. App'x 1, 2 (1st Cir. 2012) (endorsing IJ's conclusion that IUD insertion "'is not necessarily a procedure designed to amount to persecution on account of the Chinese family planning policy'"); Huang v. Attorney Gen. of U.S., 620 F.3d 372, 380 n.5 (3d Cir. 2010) ("Mandatory birth-control measures short of abortion or sterilization, such as insertion of an IUD or required gynecological screenings, do not, on their own, rise to the level of persecution . . . ."); Xia Fan Huang v. Holder, 591 F.3d 124, 130 (2d Cir. 2010) (concluding that "the BIA's interpretation that a forced IUD insertion is not a per se ground for granting asylum is entitled to deference").

As the BIA noted, the record provides no support for the finding that any aggravating circumstances would be involved in any implantation.[6] Even Lin does not argue that such a finding would be supportable and that claim is waived. As said, the IJ found that Lin had not even established with certainty that she would be forced to undergo IUD implantation. The BIA did not err in

---

[6] As a result, we need not consider, on the facts of this case, what "aggravating circumstances," In re M-F-W- & L-G-, 24 I. & N. Dec. 633, 642 (BIA 2008), must accompany the implantation of an IUD for it to rise to the level of persecution.

reversing the IJ's grant of asylum based on this finding.  See Hui
Lin Huang v. Holder, 677 F.3d 130, 134 (2d Cir. 2012) ("[A] finding
may   be   rejected   under   clearly   erroneous   review   as
speculative . . . in those instances where the IJ lacks an adequate
basis in the record for the determination . . . .").

B.          Lin's Fear of Persecution Based on the Possibiity of
            Having Additional Children in China and Being Subject to
            Forced Abortion or Sterilization

Lin asserts that the IJ found she "would have additional
children if returned to China, and that she would be subjected to
a forced abortion or sterilization by Chinese authorities," and
that the BIA wrongly applied de novo review in rejecting these
findings as "speculative."  While the BIA reviews an IJ's factual
findings for clear error, 8 C.F.R. § 1003.1(d)(3)(i), the question
of whether "the possibility of . . . events occurring gives rise to
a well-founded fear of persecution under the circumstances of the
alien's case" is a conclusion that the BIA reviews de novo, Huang,
620 F.3d at 383; id. at 384 n.8; see also Hui Lin Huang, 677 F.3d
at 135-37.  We review the BIA's rulings on this question under a
deferential substantial evidence standard.  Vilela, 620 F.3d at 28;
Huang, 620 F.3d at 386-87.

Lin is wrong about the findings that the IJ made and the
conclusion the BIA reached.  The IJ found only that Lin wished to
give birth to additional children, and that her Chinese family
members who had no U.S.-born children had been forcibly subjected

-13-

to sterilizations or abortions. The BIA reasonably determined that "respondent's fear that she would suffer persecution based on the future additional births is too speculative to be considered well-founded." This conclusion was the proper subject of de novo review by the BIA. See Wang v. Mukasey, 508 F.3d 80, 84 (1st Cir. 2007) (distinguishing between the finding that a petitioner may have additional children and the conclusion that the risk of future persecution based on such births was speculative).

Lin's documents from a family planning council and two committees in Fujian Province stating that a parent must undergo IUD insertion after having one son and sterilization after two sons do not establish her burden. As the BIA noted, these documents do not state that these procedures will be forced or specify what penalties will result from failure to comply. See In re S-Y-G-, 24 I. & N. Dec. 247, 257 (BIA 2007). We have also noted that similar documents from local Fujian commissions are insufficient to establish a well-founded fear of persecution, given other evidence that family planning enforcement efforts in Fujian Province are "lax" and "uneven." Zheng v. Mukasey, 546 F.3d 70, 73 (1st Cir. 2008) (quoting In re J-W-S-, 24 I & N Dec. 185, 193 (BIA 2007)) (internal quotation marks omitted).

Lin argues that the 2009 Congressional-Executive Commission Report and the 2007 Profile demonstrate that China punishes family planning violators with forced sterilizations and

abortions.  Far from showing such a policy exists, these documents actually show that such forced procedures occur only "in some cases" or "occasionally."  The 2007 Profile states that "Consulate General officials visiting Fujian . . . did not find any cases of physical force employed in connection with abortion or sterilization."

Substantial evidence supported the BIA's conclusion that Lin's speculative fear of future persecution based on possible additional births was not sufficient for her to establish a well-founded fear, as required for a grant of asylum.  8 U.S.C. § 1101(a)(42)(A).

Since Lin's asylum claim fails, so too does her claim for withholding of removal, which requires meeting a higher standard. Lobo v. Holder, 684 F.3d 11, 19-20 (1st Cir. 2012).

## III.

Lin's petition for review is denied.