# United States Court of Appeals
## For the First Circuit

No. 24-1172

MILTON GEOVANNY VARGAS PANCHI; AIDI VERONICA CONDOR LASSO;

M.A.V.C.; J.N.V.C.,

Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Aframe, Selya, and Kayatta, <u>Circuit Judges</u>.

<u>Benjamin D. Klub</u>, with whom <u>Kevin P. MacMurray</u> and <u>MacMurray & Associates</u> were on brief, for petitioners.
<u>Nehal H. Kamani</u>, Trial Attorney, Office of Immigration Litigation, with whom <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, Civil Division, and <u>David J. Schor</u>, Senior Litigation Counsel, were on brief, for respondent.

January 13, 2025

**KAYATTA**, **Circuit Judge**.  Milton Geovanny Vargas Panchi, his wife Aidi Veronica Condor Lasso,[1] and children M.A.V.C. and J.N.V.C. petition for review of a Board of Immigration Appeals (BIA) final order of removal.  The BIA affirmed the decision of an Immigration Judge (IJ) that denied Vargas Panchi's request for asylum and withholding of removal and ordered petitioners removed to Ecuador.  The BIA and IJ (together, the "agency") concluded that Vargas Panchi failed to establish a nexus between the harm that befell him and any protected ground for asylum; that other harm he experienced on account of a protected ground did not rise to the level of persecution; and that he did not have a well-founded fear of future persecution.  Seeing no error of law or lack of substantial evidence supporting these findings, we must deny the petition.  Our reasoning follows.

## I.

Vargas Panchi, his wife, and their two children -- all natives and citizens of Ecuador -- entered the United States on August 23, 2021.  Later, the Department of Homeland Security (DHS)

---

[1] Condor Lasso's Ecuadorian identity document in the administrative record indicates that her first name is "Aida." Counsel for petitioners also refers to Condor Lasso as "Aida" in the body of their brief to us.  However, counsel uses "Aidi" on the cover page of their brief.  And the Board of Immigration Appeals (BIA) decision that we are asked to review lists her name as "Aidi," and links that name to her Alien Registration Number. Because no party has sought to change the spelling in the case name and records, we use "Aidi" for consistency with the agency's decision and internal records.

filed a Notice to Appear with the Immigration Court to begin removal proceedings against Vargas Panchi and his family. See 8 U.S.C. § 1182(a)(6)(A)(i), (7)(A)(i)(I). On July 29, 2022, Vargas Panchi filed an application for asylum and withholding of removal, including his wife and two children as derivative beneficiaries.[2] He otherwise conceded removability as charged.

In his pre-hearing memorandum, Vargas Panchi indicated that he sought asylum based on the persecution he suffered and would continue to suffer on account of his race and membership in the particular social group of "Indigenous Ecuadorian men."[3]  As supporting evidence, he submitted his own declaration, declarations from family members and an attorney stating that he and his family left Ecuador due to crime and violence, photographs of his injuries and his family, and personal identification documents for himself, his wife, and his two children. He also submitted country-conditions evidence showing the discrimination and harm faced by indigenous communities in Ecuador.

---

[2]  Vargas Panchi also sought protection under the regulations implementing the Convention Against Torture (CAT). However, he does not petition for our review of the BIA's finding that he waived his CAT claims by failing to appeal the IJ's negative determination.

[3]  In his representations to the agency and his briefs to us, Vargas Panchi variously refers to "race" and "indigeneity" to define the protected group in which he claims membership. We will follow suit.

On August 31, 2023, Vargas Panchi testified before the IJ at his merits hearing. He stated that he and his family left Ecuador because they experienced frequent discrimination on account of being indigenous. For example, they would experience verbal harassment from people in bigger cities or towns when traveling from the countryside to sell potatoes, and his children faced name-calling and discrimination at school.

In particular, Vargas Panchi testified that he was once hit over the head with a beer bottle by members of a mostly mestizo[4] soccer team, who initiated a brawl after losing to his mostly indigenous soccer team. He testified that his assailants threatened to "kill [him], or . . . kill [his] entire family" when they next saw him and that he was knocked unconscious by the blow. When asked whether "that fight [was] a result over passion that had to do with something that was occurring in the game," Vargas Panchi answered, "Yes, because we won the game. That's why the fight started." When pressed about the cause of the fight "besides the fact that [his team] won," he confirmed that the fight happened "because [his team] won the game, and [the other team] didn't like that." He further testified that, because he was indigenous, the

_____

[4] In his testimony before the IJ, Vargas Panchi referred to "mestizo" or "mixed-race" Ecuadorians, in contrast to indigenous Ecuadorians.

police did not want to assist him when he tried to file a report about the attack.

Vargas Panchi also stated that he was denied treatment for his head injury at the public hospital due to his indigeneity. Specifically, he testified that he was told by hospital employees that they would not treat him because he was indigenous. After spending two days in the hospital waiting room without treatment, Vargas Panchi sought and received care at a private clinic, which included eighteen stitches on his head and a six-week hospital stay.

Vargas Panchi testified that he and his soccer team avoided their assailants after the brawl and that he did not experience any further problems from his assailants before leaving for the United States three years later. He also testified that he has family still residing in Ecuador, including his parents, two brothers, and a sister, and that they still suffer discrimination based on their indigenous status "when [they] go to the city."

On August 31, 2023, the IJ issued an oral decision denying Vargas Panchi and his family's asylum and withholding-of-removal claims. The IJ found Vargas Panchi credible. The IJ also found that "being knocked unconscious and having stitches is certainly severe enough" to rise to the level of persecution. However, the IJ found that Vargas Panchi failed

to show that his indigeneity was "one central reason" for the assault, finding instead that his assailants "were motivated by anger, frustration, passion that goes with losing a competitive game." The IJ also found that while Vargas Panchi subjectively feared returning to Ecuador, such a fear was not objectively well-founded, given that Vargas Panchi's assailants "never [again] threatened or harmed or had any encounters with [him] in any way." The IJ also stated that the other discrimination Vargas Panchi faced in Ecuador based on his race did not rise to the level of persecution. Finally, because the IJ found that Vargas Panchi did not meet the burden for asylum, he also concluded that Vargas Panchi failed to meet the higher burden for withholding of removal.

The BIA affirmed. First, the BIA found that the IJ did not clearly err by finding a lack of nexus between Vargas Panchi's head injury at the soccer game and his indigeneity. The BIA acknowledged the possibility of a mixed-motive attack, wherein Vargas Panchi's indigeneity need only be "one central reason" for the attack to satisfy the nexus requirement. However, noting that Vargas Panchi "did not indicate in his testimony, written statement, or asylum application that the attackers said or did anything to suggest that his race" or indigeneity "played any role" in the attack, it affirmed the IJ's analysis. Finally, the BIA agreed with the IJ that the other discrimination Vargas Panchi faced in Ecuador, including the denial of medical treatment after

his soccer injury, did not "rise to the level of persecution." As a result, the BIA concluded that Vargas Panchi was not eligible for either asylum or withholding of removal.

Vargas Panchi and his family now petition this court for review.

## II.

When the BIA adopts and affirms an IJ's reasoning while adding its own, "we review both opinions as a unit." Varela-Chavarria v. Garland, 86 F.4th 443, 449 (1st Cir. 2023). We review legal conclusions de novo and factual findings under the "substantial evidence" standard. López-Pérez v. Garland, 26 F.4th 104, 110 (1st Cir. 2022). Under that standard, we "accept the agency's findings of fact, including credibility findings, as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). In other words, we "only disturb the agency's [factual] findings if, in reviewing the record as a whole, 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Barnica-Lopez v. Garland, 59 F.4th 520, 527 (1st Cir. 2023) (quoting Gómez-Medina v. Barr, 975 F.3d 27, 31 (1st Cir. 2020)).[5]

_____

[5] Vargas Panchi briefly argues that the BIA erred by applying clear-error review to the IJ's nexus determination, a mixed

## III.

To qualify for asylum, Vargas Panchi must show that he has a well-founded fear that, should he return to Ecuador, he will be persecuted "on account of" a protected ground; namely "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see Harutyunyan v. Gonzales, 421 F.3d 64, 67 (1st Cir. 2005). And if he shows that he has been subject to such persecution in the past, he would establish a rebuttable presumption that he has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1) (2024); see Harutyunyan, 421 F.3d at 67. To qualify for withholding of removal, Vargas Panchi must meet the same requirements as he must to show eligibility for asylum but must also show "a clear probability" of persecution -- a higher standard than asylum's well-founded fear requirement. See Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021) (citing 8 U.S.C. § 1231(b)(3)(A)).

---

question of law and fact. See 8 C.F.R. § 1003.1(d)(3)(ii) (2024) ("The Board may review questions of law . . . in appeals from decisions of immigration judges de novo."). But the BIA applied clear-error review only to the IJ's findings as to motive, a question of fact. See Matter of N-M-, 25 I. & N. Dec. 526, 532 (B.I.A. 2011) ("A persecutor's actual motive is a matter of fact to be determined by the [IJ] and reviewed by us for clear error."). In other words, after finding no clear error in the IJ's determination that Vargas Panchi's assailants lacked the requisite motive, the BIA "agree[d]" with the IJ that there had therefore been no showing of nexus.

Vargas Panchi asserts that the agency erred by failing to accord him a presumption of a well-founded fear of future persecution based on past persecution. Specifically, he challenges the findings that the attack at the soccer game was not "on account of" his race or indigeneity and that the hospital's refusal to treat him did not constitute persecution. Vargas Panchi also contends that the agency erred by failing to find that he had an independently well-founded fear of future persecution. We address each argument in turn.

**A.**

We begin with Vargas Panchi's challenge to the agency's failure to find that he suffered past persecution.

**1.**

Vargas Panchi first challenges the agency's determination that he failed to show that race or indigeneity was a central reason for the attack after the soccer match. To show past persecution on account of a protected ground, that ground need not be the only reason for the persecution, since "[i]n many cases, of course, persecutors may have more than one motivation." Singh v. Mukasey, 543 F.3d 1, 5 (1st Cir. 2008). Still, even in mixed-motive cases, the protected ground must be at least "one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i); see Aldana-Ramos v. Holder, 757 F.3d 9, 18—19 (1st Cir. 2014). And here, we find that substantial evidence supports the agency's

determination that Vargas Panchi's race or indigeneity was not a central reason for the attack. See Lemus-Aguilar v. Garland, 112 F.4th 39, 44 (1st Cir. 2024) (applying the substantial-evidence standard to review a finding concerning a gang's motivation to target petitioner). In his hearing before the IJ, Vargas Panchi repeatedly stated that the fight after the soccer match broke out "because [his team] won the game" and the opposing team "didn't like that[,] so they start[ed] fighting." The IJ did not clearly err in finding that these limited answers failed to satisfy Vargas Panchi's burden of proving that his assailants were motivated by his race or indigeneity when they attacked him.

Vargas Panchi asks us to infer from circumstantial evidence that the attack was also racially or ethnically motivated, noting that the BIA needed to consider the possibility of a mixed-motive attack. For example, he points to his testimony before the IJ about the ethnic differences between the soccer teams: His was made up of "only family members mostly" from his local area, which was rural and mostly indigenous, while the opposing team was made up of mestizos from a different area about an hour and a half away. He also directs us to his other testimony about the discrimination that he and his family faced from mestizo Ecuadorians and to country conditions evidencing discrimination against indigenous Ecuadorians in general.

- 10 -

To be sure, circumstantial evidence may suffice to show an attacker's racial or ethnic motivations -- indeed, in some cases it may be all that an applicant is able to provide. See Elias-Zacarias, 502 U.S. at 483. But even if Vargas Panchi's testimony that the attack was motivated by the opposing team's loss would not have precluded a finding that his attackers were also motivated by racial or ethnic animus mixed with the "passion" of the soccer match, "[t]hat the record supports a conclusion contrary to that reached by the BIA is not enough to warrant upsetting the BIA's view of the matter; for that to occur, the record must compel the contrary conclusion." Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007). In the face of Vargas Panchi's concession that the soccer defeat was a clearly apparent motive for the attack, and the lack of any references by the losers to race or indigeneity, we cannot say that the agency was "compelled" to infer that race or indigeneity was a central reason for the assault.[6] See Barnica-Lopez, 59 F.4th at 527 (quoting Gómez-Medina, 975 F.3d at 31).

---

[6] To the extent Vargas Panchi implies that the agency did not properly recognize the possibility of a mixed-motive case, we have previously rejected such claims where the agency accurately recites the "one central reason" standard, as both the IJ and BIA did here. See Esteban-Garcia v. Garland, 94 F.4th 186, 193 (1st Cir. 2024); Loja-Tene v. Barr, 975 F.3d 58, 61—62 (1st Cir. 2020); Villalta-Martinez v. Sessions, 882 F.3d 20, 24 (1st Cir. 2018).

- 11 -

Citing Matter of Fuentes, 19 I. & N. Dec. 658, 662 (B.I.A. 1996), Vargas Panchi also suggests that the nexus determination should hinge on whether he reasonably regarded the soccer game attack as on account of a protected status, rather than on whether the attack was in fact on account of a protected status. But the cited language in Matter of Fuentes concerned not past persecution but petitioner's fear of future persecution. Id. (noting that, to establish a well-founded fear, petitioner "b[ore] the burden of establishing facts on which a reasonable person would fear that the danger arises on account of" a protected ground). We acknowledge that we have previously used the cited language from Matter of Fuentes in discussing the nexus standard for past persecution. See Esteban-Garcia v. Garland, 94 F.4th 186, 192–94 (1st Cir. 2024). But in Esteban-Garcia, we also stated that a petitioner seeking to prove past persecution must come forward with evidence of "an actual connection between the harm . . . suffered and [the] protected trait," id. at 192 (quoting Ivanov v. Holder, 736 F.3d 5, 12 (1st Cir. 2013)), and we affirmed a finding that petitioner's "membership in a protected group was not a central reason for the harm she experienced," id. at 193. In short, a petitioner's belief, whether reasonable or not, is not determinative of a finding that past persecution was on account of a protected ground. This makes sense because, in the case of assessing whether persecution was on account of a protected ground,

- 12 -

a factfinder can inquire into what actually happened -- unlike when directly assessing a fear of future persecution.

Accordingly, we affirm the agency's finding that the soccer game attack lacked a nexus to a protected ground.

**2.**

Vargas Panchi also argues that the agency erred by finding that the denial of medical care at the government hospital due to Vargas Panchi's indigeneity did not rise to the level of persecution. We review that challenged finding to see if it is supported by substantial evidence.[7] See Khalil v. Garland, 97 F.4th 54, 66 (1st Cir. 2024). In so doing, we consider "the severity, duration and frequency of the harm; whether harm is systematic rather than reflective of a series of isolated incidents; the nature and extent of the applicant's injuries; and whether the applicant had to seek medical attention for their injuries." Id. (cleaned up). "Generally, persecution is more than discrimination and rises above unpleasantness, harassment,

_____

[7] We have several times noted the apparent tension between our substantial-evidence standard for reviewing a finding of no persecution, and the BIA's de novo review of whether the facts proved persecution. See Khalil v. Garland, 97 F.4th 54, 66 n.7 (1st Cir. 2024); Aguilar-Escoto v. Garland, 59 F.4th 510, 519—20 (1st Cir. 2023). In those cases, the parties did not raise this tension on appeal nor did the cases require addressing it; the same applies here. As such, we "leave this issue to another day." Aguilar-Escoto, 59 F.4th at 520.

- 13 -

and even basic suffering." Kadri v. Mukasey, 543 F.3d 16, 21 (1st Cir. 2008).

Certainly the intentional denial of medical care on account of race is abhorrent. And certainly it could rise to the level of persecution in the right circumstances. Cf. Cole v. Holder, 659 F.3d 762, 773—74 (9th Cir. 2011) (finding that petitioner's claim that he would be denied necessary medical care in Honduras due to his gang affiliations could constitute torture under CAT). But the question before us is whether the record in this case left the BIA with no option under the law but to find that this single incident of denying medical care rose to the level of persecution. See Khalil, 97 F.4th at 66 (finding that the harm alleged did not rise to the level of persecution where the record did not "compel[]" that "conclu[sion]"). And as to this question, Vargas Panchi's arguments fall short. The record contains no evidence indicating the impact on Vargas Panchi of the denial of care. Although Vargas Panchi testified that he waited two days in the hospital waiting room without anyone cleaning his wound or providing care, he did not testify to any increased pain, suffering, or injury that this may have caused him in the moment, nor to any long-term effects. Although he testified that his wound required eighteen stitches and a six-week hospital stay, he did not provide evidence that the need for that care was in any way attributable to the initial denial of care or even known to the

hospital employees who denied him treatment. Without any evidence in the record about the level of severity of the harm caused by the denial of care, we cannot say that the BIA was "compelled to conclude" that the denial of medical care rose to the level of persecution. See id. (upholding agency's rejection of a claim of persecution based on allegations of "constan[t]" rock throwing and cursing where "the record contain[ed] no information on the nature and extent of [petitioner's] injuries, the severity of the harm, or whether the harm was systematic"); Martínez-Pérez v. Sessions, 897 F.3d 33, 41 (1st Cir. 2018) (same for a persecution claim based on allegations of threats and a home invasion, where the record contained no evidence of injuries); Vasili v. Holder, 732 F.3d 83, 90 (1st Cir. 2013) (same for a persecution claim based on allegations of a beating at a traffic stop where "the record [was] wholly devoid of evidence as to the nature and extent" of injuries).

**B.**

Because Vargas Panchi fails to show that the agency erred in finding that he did not suffer past persecution on account of a protected ground, he cannot benefit from a presumption of a well-founded fear of future persecution on account of a protected ground. See 8 C.F.R. § 208.13(b)(1) (2024). But Vargas Panchi could still qualify for asylum by showing, without the benefit of any presumption, a well-founded fear of future persecution. Id.

- 15 -

§ 208.13(b)(2) (2024); see Pojoy-De León v. Barr, 984 F.3d 11, 16 (1st Cir. 2020). To establish such a fear, Vargas Panchi "must produce 'credible, direct, and specific evidence supporting a fear of individualized persecution [on account of a protected ground] in the future.'" Pojoy-De León, 984 F.3d at 16 (quoting Decky v. Holder, 587 F.3d 104, 112 (1st Cir. 2009)). In the asylum context, that fear need not be more likely than not to occur, INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987), but its occurrence must be at least a "reasonable possibility," 8 C.F.R. § 208.13(b)(2)(i)(B) (2024); see, e.g., Hernandez-Mendez v. Garland, 86 F.4th 482, 486 (1st Cir. 2023). We review a challenge to an agency finding of no such fear by asking whether "the record . . . compel[s] a contrary conclusion." Esteban-Garcia, 94 F.4th at 194; see also Liu Jin Lin v. Holder, 723 F.3d 300, 307 (1st Cir. 2013) ("We review the BIA's rulings on th[e] question [of whether there is a well-founded fear of future persecution] under a deferential substantial evidence standard.").[8]

Vargas Panchi first argues that the threats from his soccer game attackers combined with the denial of medical care

_____

[8] Vargas Panchi incorrectly asserts that "the issue of whether an applicant has an objectively reasonable fear of future persecution is subject to de novo review" by this court. It is the BIA that applies a de novo standard to the IJ's findings on this issue. See Matter of Z-Z-O-, 26 I. & N. Dec. 586, 590–91 (B.I.A. 2015); 8 C.F.R. § 1003.1(d)(3)(ii) (2024); see also Liu Jin Lin, 723 F.3d at 307 (contrasting the BIA's de novo review with our substantial-evidence standard on the same question).

- 16 -

based on his race or indigeneity together compel a finding that he has a well-founded fear of future persecution. To the extent he argues that he has a well-founded fear of future attacks such as the one he suffered after the soccer game, the record does not compel a conclusion that any future attack, unlike the past one, would be on account of his race or indigeneity. And to the extent he argues that if a future attack were to occur, he would be denied medical treatment because of his indigeneity and thus suffer harm on account of a protected ground rising to the level of persecution, the record lacks any evidence that a future attack has a "reasonable possibility" of taking place. See 8 C.F.R. § 208.13(b)(2)(i)(B) (2024). At the time of his hearing, three years had passed without any recurrence of similar violence, and Vargas Panchi does not claim that his parents and two brothers who still live in Ecuador have suffered any injuries at the hands of others -- despite his testimony that the threats were made against both him and his family. See Sanchez-Vasquez, 994 F.3d at 47 (finding that petitioner's "professed fear of future harm was undercut by the fact that his father and siblings, who share [his] religious affiliation, continue to live" without religious persecution in El Salvador). And although Vargas Panchi points to evidence of generalized discrimination against indigenous people in Ecuador, this evidence is not particularly probative of the specific harms he fears.

- 17 -

In short, this record left room for the agency to conclude as it did that Vargas Panchi did not carry his burden of proving a well-founded fear of future persecution. See Nikijuluw v. Gonzales, 427 F.3d 115, 121-22 (1st Cir. 2005) (holding that "the record does not allow us to quarrel with" the agency's finding of no well-founded fear of future persecution where petitioner was previously attacked but then "continue[d] to live peaceably in his native land" and country-conditions evidence showed attacks on his religious group were "in significant decline").

Finally, Vargas Panchi argues that he has a reasonable fear of future persecution due to a pattern or practice of persecution of indigenous people in Ecuador.[9] Under asylum law, an applicant need not produce evidence of the threat of individualized persecution if the applicant establishes (1) a pattern or practice of persecution of similarly situated persons on account of a statutorily protected ground and (2) the applicant's own inclusion in that group such that a fear of persecution is reasonable. 8 C.F.R. § 208.13(b)(2)(iii) (2024).

---

[9] Although the BIA did not make an explicit determination as to Vargas Panchi's pattern-or-practice theory, "we will not require that it address specifically each claim [] petitioner made or each piece of evidence [] petitioner presented." Martinez v. INS, 970 F.2d 973, 976 (1st Cir. 1992). In any event, Vargas Panchi does not argue in his petition for our review that the BIA erred by failing to consider the theory, and the record substantially supports a denial of the pattern-or-practice argument.

To establish a pattern or practice, this court has held that "an applicant must present evidence of 'systematic persecution' of a group." Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007) (citing Meguenine v. INS, 139 F.3d 25, 28 (1st Cir. 1998)). We have reserved the pattern-or-practice category only for "extreme" cases. See Rasiah v. Holder, 589 F.3d 1, 5 (1st Cir. 2009) (rejecting a pattern-or-practice argument for Tamil men in Sri Lanka where widespread civil strife resulted in thousands of detentions and hundreds of disappearances and casualties). Here, Vargas Panchi has not met this exacting standard. Rather, he points only to evidence in the administrative record that shows that indigenous people in Ecuador face widespread discrimination, poverty, and occasional violence. As such, we find that the agency's conclusion that Vargas Panchi did not have a reasonable fear of future persecution was substantially supported by the evidence.[10]

## IV.

For the foregoing reasons, we must deny the petition.

---

[10] Because Vargas Panchi does not show a well-founded fear of future persecution and therefore is ineligible for asylum, his withholding-of-removal claim necessarily also fails. See Gomes v. Garland, 17 F.4th 210, 217 (1st Cir. 2021).